# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **ERIC CLEVELAND, ET AL.** | **CIVIL ACTION NO. 67-12924** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **UNION PARISH SCHOOL BOARD, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## RULING

Currently pending before the Court is a Motion for Relief From Order of May 27, 2009 ("Motion for Relief") [Doc. No. 62] filed by Union Parish School Board ("Union") on August 3, 2009.  Union moves the Court to reconsider its May 27, 2009 ruling and order [Doc. Nos. 59 & 60], granting the Second Motion for Authorization to Operate a Charter School in Union Parish [Doc. No. 50] filed by D'Arbonne Woods Charter School, Inc. a/k/a D'Arbonne Woods Charter School, a Louisiana Corporation ("DWS").   Because classes are scheduled to commence this month at Union Parish schools, including DWS, Union also moved the Court for expedited consideration of its Motion for Relief. [Doc. No. 63].

On August 4, 2009, the Court conducted a telephone conference with Steve Katz, counsel for Union; Don Kneipp and David Thomas, counsel for DWS; State Representative Hollis Downs; State Senator Mike Walsworth; DWS Director Corie Williams; Superintendent Steve Dozier; attorney Kenneth Campbell; and Louisiana Department of Education ("LDE") General Counsel, Jim Hrdlicka.  The parties agreed to attempt a private settlement, but also wished to set a hearing date. Accordingly, the Court set a hearing for the following day, August 5, 2009.

On August 5, 2009, a hearing was held at the United States District Courthouse, Monroe, Louisiana. After lengthy discussion, however, the parties agreed to submit the matter on the record. The Court took the Motion for Relief under advisement and is now prepared to rule.

## I.      Procedural History and Pertinent Facts

Union has operated under a desegregation decree for more than thirty years, and the Court is required to review any actions which may hamper Union's ability to remedy the vestiges of the dual school system.

On December 7, 2007, DWS obtained approval from the State Board of Secondary and Elementary Education ("BESE") to operate as a Type 2 charter school.[1] *See* [Exhibit 4]. Type 2 charter schools are "independent public schools," La. Rev. Stat. 17: 3972, and any student who resides "within the state" shall be eligible to attend, as provided in the charter. *See* La. Rev. Stat. 17:3973(b)(ii) (Definition of Type 2 charter school).

Despite BESE's approval of DWS, the LDE also required DWS to obtain federal court authorization to operate a charter school in Union Parish because all public schools in that parish are subject to the February 11, 1970 desegregation order, as modified.

In the summer of 2008, DWS first filed a Motion for Authorization to Operate a Charter School in Union Parish. Following briefing and a hearing, on July 16, 2008, the Court denied DWS's first motion. [Doc. Nos. 26 & 27]. However, the Court explained, both in its ruling and in conferences with counsel for Union and DWS, the steps DWS would need to take to obtain authorization to operate if it wished to reapply for the 2009-2010 school year.

_____

[1]DWS went through the application and evaluation process two times, for the 2007-2008 school year and for the 2008-2009 school year. BESE denied DWS's application for the 2007-2008 school year, but approved it for the 2008-2009 school year.

Following the Court's July 16, 2008 Ruling, DWS timely filed an appeal to the United States Court of Appeal for the Fifth Circuit. [Doc. No. 31]. That appeal remained pending in January 2009, but the Court anticipated that DWS might seek authorization for operation of the charter school for the 2009-2010 school year. The Court held a telephone status conference with counsel on January 27, 2009, to determine whether DWS intended to file a second motion for authorization and discuss the need for the early filing of that motion.

Around the same time the Court considered and ruled on DWS's first Motion for Authorization, the Louisiana Legislature amended the funding statute for Type 2 charter schools authorized after July 1, 2008. "Type 2 charter schools authorized by the State Board of Elementary and Secondary Education after July 1, 2008, shall receive a per pupil amount each year as provided in the Minimum Foundation Program approved formula." La. Rev. Stat. 17:3995. The amended statute further provided that the "state-funded per pupil allocation" received by the local school district would be the basis for funding Type 2 charter schools authorized after July 1, 2008. Finally, the amended statute provided that Type 2 charter schools authorized after July 1, 2008, would receive a percentage of the local revenue of the school district in which the charter school was located, including sales and use taxes, ad valorem taxes, and earnings from sixteenth section lands. Thus, post-July 1, 2008 charter schools receive a state and local per pupil amount to fund the cost of education for its students.

On April 16, 2009, DWS filed a Second Motion for Leave to File a Second Motion to Intervene and Second Motion for Authorization [Doc. No. 48]. On April 20, 2009, the Second Motion for Leave was granted. On April 21, 2009, the Court conducted another telephone status conference with counsel and set a hearing on the Second Motion for Authorization for May 19,

2009. Separately, the Court granted DWS's Second Motion to Intervene for the sole purpose of

seeking authorization of the operation of a charter school.

On May 4, 2009, Union filed a Response to the Second Motion for Authorization [Doc. No.

53]. As part of its response, Union explained that it anticipated losing approximately $350,000.00

in its general fund budget as a result of a decrease in payments from the State of Louisiana through

the Minimum Foundation Program formula ("MFP") for those students who attend DWS.

Additionally, Union anticipated losing between $30,000.00 and $40,000.00 in Title I federal funds,

which are used to supplement educational benefits for at-risk students. [Doc. No. 53, ¶ 14].

On May 18, 2009, DWS filed a Motion to exempt minority applicants from the lottery

normally used to select students for admission to a charter school, pursuant to La. Rev. Stat.

17:3991(C)(1)(c)(i).

On May 19, 2009, the Court held a hearing on the Second Motion for Authorization. The

Court heard testimony from DWS Director Corie Williams and took the Second Motion for

Authorization under advisement.

On the same day, the Court granted DWS's Motion to exempt minority applicants from the

lottery selection process. In effect, the Court's May 19, 2009 Order [Doc. No. 55] permitted DWS

to accept all of its minority applicants.

On May 27, 2009, the Court issued a Ruling and Order [Doc. Nos. 59 & 60] granting DWS's

Second Motion for Authorization. In its Ruling, the Court recognized, based on the evidence

presented at the hearing, that Union "has operated under serious financial constraints for several

years," that "DWS's operation would result in a loss of funds to Union . . . which will not be offset

by a reduction in operating expenses," and that the "additional [financial] loss . . . will hamper

Union's ability to meet its obligations under the February 11, 1970 Decree, as modified." [Doc. No. 59, pp. 12-13]. However, the Court determined that the negative impact on desegregation could be addressed with the imposition of the following conditions:

(1)     DWS must comply with the February 11, 1970 desegregation decree and modifications in this case, including the requirement that on or before October 15th of each calendar year, DWS must submit to the Court an annual report containing (A) the enrollment by grade and race and (B) the name and race of each teacher employed for the current school year.

(2)     DWS must employ a non-discriminatory hiring policy and make reasonable and good faith efforts to recruit and hire minority faculty and staff;

(3)     DWS must make reasonable and good faith efforts to include minority parents, business leaders, educators, and/or administrators as members of the Executive Committee and the Board of Directors;

(4)     By October 1, 2009, DWS must have a student body comprised of at least 1/3 racial minorities; and

(5)     DWS must increase its minority enrollment each year, so that by the third year of operation (the 2011-2012 school year), it has a minority enrollment of 37.5%, based on current racial demographics, but subject to reconsideration.

[Doc. No. 59, p. 15].

Following the Court's Ruling, DWS moved to dismiss its appeal of the Court's denial of its first Motion for Authorization. On July 7, 2009, the Fifth Circuit granted DWS's motion to dismiss. [Doc. No. 61].

On July 27, 2009, BESE met in a special session. At that session, BESE considered the funding of DWS. For reasons not clear to the Court or to either Union or DWS, the 2009 state budget authorized by the Louisiana Legislature did not include funding for DWS. However, during the July 27, 2009 session, BESE took action which resulted in DWS being considered by the LDE to be a Type 2 charter school authorized after July 1, 2008, entitled to receive funding through taxes

previously designated for the use of the local school district.

Separately, however, Union will receive $1,000,000.00 as "emergency assistance" for the 2009-2010 school year because of the loss of local revenue from the closure of a local plant. Pursuant to Senate Resolution 146, introduced by Senator Walsworth, BESE has been requested to establish usage and accounting criteria for these funds. LDE is currently developing an implementation plan for submission to BESE. Senator Walsworth urged in his Resolution that these funds not be used for general operating expenses, but for other projects, such as the renovation of buildings.

On August 3, 2009, Union filed the pending Motion for Relief based on new evidence.

## II.     Law and Analysis

Because Union's Motion for Relief was served more than ten days after the entry of the Court's Ruling and Order [Doc. Nos. 59 & 60], the Court must review the Motion under Federal Rule of Civil Procedure 60(b). *See Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n. 14 (5th Cir. 1994); *Teal v. Eagle Fleet, Inc.*, 933 F.2d 341, 347 n. 3 (5th Cir. 1991).

Rule 60(b)(6) provides that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any other reason that justifies relief." FED. R. CIV. P. 60(b)(6).

In this case, Union has provided the Court with information and evidence not available to it, DWS, or the Court at the time of the ruling on DWS's Second Motion for Authorization. Specifically, at the time of the hearing on May 27, 2009, neither Union nor DWS believed that BESE would treat DWS as a Type 2 charter school "authorized after July 1, 2008," so that it would

receive a percentage of the local revenue of Union through sales and use taxes and ad valorem taxes, which had been voted on by the residents of Union Parish to maintain school buildings and teacher salaries.

According to the affidavit of Beth Scioneaux ("Scioneaux"), the Deputy Superintendent for Management and Finance for the LDE, Union will be required to transfer to DWS the local portion of the per pupil amount of $2,405.00 for each of DWS's 216 students. Rather than having Union collect and forward the local portion directly to DWS, the LDE will deduct monthly installments of $43,290.00 from the State-funded MFP payments to be made to Union. In total, the LDE will collect $519,480.00 from Union's MFP funds to cover the local portion allegedly due to DWS,[2] whether or not Union is successful in collecting the local sales and use taxes and ad valorem taxes.

On the other hand, contrary to the information provided to the Court in May 2009, Union will **not** lose the state portion of the MFP funds for the 216 students attending DWS during the 2009-2010 school year. The MFP funds for Union were determined based on the student count conducted in February 2009. Thus, the DWS students will not be deducted from the student count for Union until July 10, 2010, and the funds will then be allocated to DWS for the 2010-2011 school year.

Having fully considered the evidence presented, the Court finds that, in effect, for the 2009-2010 school year, Union will suffer at least a net loss of $119,480.00 more than the Court and the parties anticipated in May 2009. Given the on-going financial problems of Union, this additional loss is likely to result in a diminished quality of education for the more than 1,200 African-

---

[2]The Court expresses no opinion whether BESE properly treated DWS as a Type 2 charter school "authorized" after July 1, 2008, as that issue is beyond the scope of the Court's jurisdiction in this matter.

American students it serves.   While the Court recognizes the considerable benefit to Union in receiving the one-time $1,000,000.00 emergency funds from the State, the Court also recognizes that it is unlikely that the funds can be used for general operating expenses.  Accordingly, the Court finds that Union has provided the Court with some basis for relief from the Court's May 27, 2009 Ruling and Order under Rule 60(b)(6).

Applying the same factors as in its previous Rulings, *see* [Doc. Nos. 26 & 59], and after lengthy discussion with counsel, the Court finds that the imposition of two additional conditions will address the concerns of the Court, Union, and DWS.  First, as a sixth condition of operation, for the 2009-2010 school year, DWS will forfeit $100,000.00 of the local portion of the MFP funds. Thus, effective July 1, 2009, the LDE must reduce its deduction of Union's MFP funds of $43,290.00 per month by $8,333.33, so that the LDE is authorized to deduct $34,957.00 per month, for a total of $419,480.00, from Union's MFP funds to cover the local portion to be paid to DWS. Second, as a seventh condition of operation, for the 2009-2010 school year, DWS will pay Union $400.00 per child for bus transportation for DWS students who reside in Union Parish.  Union will bill DWS monthly for the bus transportation fee, and DWS will pay the bill within twenty (20) days of receipt.

III.    **Conclusion**

For the foregoing reasons, Union's Motion for Relief [Doc. No. 62] is GRANTED IN PART and DENIED IN PART.  To the extent that Union moves the Court to set aside its authorization for DWS to operate a charter school in Union Parish, the Motion is DENIED.  However, the Motion is GRANTED to the extent that the Court modifies its May 27, 2009 Ruling and Order to impose the two additional conditions of operation set forth above on DWS to ensure that all students in Union

Parish are given the opportunity to obtain a properly funded public education free of the vestiges of discrimination.

MONROE, LOUISIANA, this 13th day of August, 2009.



ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE